## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO M.,** | ) | |
| | ) | **No. 25 C 8466** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge M. David Weisman** |
| **v.** | ) | |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Antonio M. appeals the Commissioner's decision denying his application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

### Background

On March 28, 2022, plaintiff applied for benefits, alleging a disability onset date of January 1, 2019. (R. 58.) His application was denied initially, on reconsideration, and after a hearing. (R. 18-33, 58-95.) Plaintiff appealed to the Appeals Council, which denied review (R. 1-7), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2019, the alleged disability onset date. (R. 21.) At step two, the ALJ found that plaintiff has the severe impairments of major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, alcohol abuse, and cannabis abuse. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 22.) At step four, the ALJ found that plaintiff had no past relevant work but has the RFC to perform a full range of work at all exertion levels with the following non-exertional limitations: "He can carry out simple instructions with sufficient concentration to carry out simple tasks and make simple work-related decisions." (R. 24-27.) At step five, the ALJ found that plaintiff has the RFC to perform jobs that exist in significant numbers in the national economy, and thus he is not disabled. (27-28.)

Plaintiff contends that the ALJ erred by not including in the RFC the moderate limitations in maintaining concentration, persistence, and pace the state agency consultants found him to have or explaining why they were left out. (*See* R. 63-65, 72-73.)  On the contrary, the ALJ's RFC is grounded directly in the agency consultants' findings, which, among others, were that plaintiff's mental impairments made him moderately limited in the ability to carry out detailed instructions and maintain attention and concentration for extended periods. (R. 62-65, 70-73, 83-84, 91-93.)

Plaintiff argues that these limitations are insufficient because "a restriction to simple tasks may not adequately account for a claimant's moderate limitations in [concentrating, persisting or maintaining pace], as 'the ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.'" (ECF 19 at 6) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)); (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). Plaintiff argues that "the ALJ failed to furnish evidence establishing that [plaintiff] could sustain work tasks over an eight-hour period, provided that the tasks were simple in nature." (*Id.* at 7.) But plaintiff had the burden of proving that he was disabled, *i.e.*, that he was unable to concentrate, persist, or maintain pace for an eight-hour workday. *See Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) ("[A]s we have underscored time and again, a claimant bears the burden of proving their disability."). Thus, the ALJ cannot be faulted for failing to "furnish evidence" (ECF 19 at 6) of plaintiff's alleged disability.

Moreover, plaintiff's contention that the ALJ did not address the social interaction limitations they found plaintiff to have is belied by the record. The consultants said: "This claimant has indicated there are problems in the social interactions and social relationships domain. This claimant would be best served via having work assignments requiring no contact with the public

3

and minimal contact with coworkers and supervisors." (R. 65, 73.) The ALJ's RFC states the same, that plaintiff "can maintain occasional interaction with supervisors and co-workers away from the public." (R. 24.)

Finally, plaintiff's contention that there is ample evidence to support the limitations he urges is just a request for the Court re-weigh the evidence. That, however, is something the Court cannot do. *See Gedatus*, 994 F.3d at 900 ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.") (citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Plaintiff's next argument is that the ALJ's symptom evaluation is faulty. "As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (citing *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021)). "To be 'patently wrong,' the ALJ's decision must 'lack[ ] any explanation or support.'" ). *Cox v. Comm'r of Soc. Sec.*, No. 1:24-CV-372-CCB-SJF, 2025 WL 2717181, at *4 (N.D. Ind. Sept. 22, 2025) (quoting *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008)). Here, the ALJ said:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the record. Notably, the medical records documented no visits for mental issues through August 2020. The claimant has history of ADHD, anxiety, and depression treated with medications, including Adderall and Wellbutrin (Exhibits 1F/4 and 7, 2F/298, and 6F/9). He was prescribed psychiatric medications in September 2020. At that time, he reported that his symptoms improved when he was taking Ability (Exhibit 1F/9). In May 2021, he reported mild depression, anxiety on planes and in crowds, and irritability (Exhibit 6F/5). Additionally, he reported use of marijuana in 2020 (Exhibit 1F/50). In September 2021, it was noted that alcohol and marijuana exacerbated his symptoms (Exhibit 2F/24). At a consultative examination, in January 2023, he was diagnosed with alcohol use disorder, severe, generalized anxiety disorder, severe, and panic disorder (Exhibit 7F/6). Yet, the overall record documented that the claimant's mental condition improved. For example, although he has history of

auditory hallucinations, in October 2021, it was noted that the claimant "denied current AVH" (Exhibit 2F/293-294). He underwent treatment at All Points North, and it was noted on discharge that he had good motivation, good compliance, and good prognosis (Exhibit 2F/298). Subsequently, in January 2022, he reported that he felt his emotional symptoms had improved (Exhibit 3F/11). During this time, he did not exhibit anger problems and denied symptoms of depression and feelings of anxiety (Exhibit 6F/44). A better attention span was noted. It was noted through September 2022 that he had no serious mental abnormalities (Exhibit 6F/47 and 79). In August 2022 and May 2023, it was noted that his symptoms had improved (Exhibits 6F/76 and 8F/15). In July 2023, he reported that his mood was okay and that his panic attacks had stopped (Exhibit 8F/40). In September 2023, he reported feeling a lot better (Exhibit 9F/17). He reported that he was thinking of going to Canada to play football (Exhibit 9F/22). During this time, it was noted that he was improved as his symptoms were less frequent or less intense (Exhibit 9F/13, 29, and 35). His energy level and concentration had improved. He had "no serious mental status abnormalities."

I point out that numerous complaints to his providers at Prizm Behavioral Services that reportedly had shown himself as functioning poorly at times, but the preponderance of the evidence from his providers at Prizm show himself as showing improvement with their treatment measures, having "no serious mental status abnormalities," and spending most of his time online or playing video games (Exhibit 9F/13, 29, and 35). This is in contrast with the testimonial allegations that he spends most of his waking hours lying on his back and being reliant on his mother to take care of him. He is able to independently care for activities of daily living (e.g., Exhibit 1F/13). He claimed he never leaves home because he feels uncomfortable around people, has distractions reading, and urinates on the floor. He claimed that symptoms occur all the time and all day. In contrast to the constant complaint of an inability to leave home, he traveled to an out-of-town residential program to Colorado in 2021 (Exhibit 2F). He told me that he traveled to and from the facility by himself by air. He claimed that he was "terrified" on the flights by himself. He goes to the gym (e.g., 8F/2). There is no documentation to suggest that he experienced any difficulties doing so. He also told me that he spent time in jail during the pandemic but that he did not precisely remember when. He did recall that he was unaware of any professional services in jail and did not get any. He felt that the only work he could ever do was to play professional football and could not do that now. However, he told Dr. Reams in 2022 that he was interested in music production (Exhibit 3F/11).

(R. 25-26.) The ALJ thoroughly explained his subjective symptom evaluation and supported it

with references to the record. It is, therefore, not the basis for remand.

**Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion [19], affirms the Commissioner's decision, and terminates this case.

**SO ORDERED.**                    **ENTERED: June 9, 2026**


**M. David Weisman**
**United States Magistrate Judge**